NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES CRISPINO, JR. and TONI M. CRISPINO, | |
| Plaintiffs, | Civ. No. 17-13751 |
| v. | **OPINION** |
| UNITED STATES INTERNAL REVENUE SERVICE, | |
| Defendant. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendant United States Internal Revenue Service ("Defendant" or "IRS") (ECF No. 38) and the Motion for Partial Summary Judgment filed by Plaintiffs Charles Crispino, Jr. and Toni M. Crispino (collectively, "Plaintiffs") (ECF No. 40). The Court has decided the Motions based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 38) is granted, and Petitioner's Motion for Partial Summary Judgment (ECF No. 40) is denied.

## BACKGROUND

### I.    Factual Background

This tax case arises from Plaintiffs' 2009 tax returns. Plaintiffs are a married couple residing in Middletown, New Jersey. (Compl. ¶ 5, ECF No. 1.) In early 2009, Plaintiff Charles Crispino, Jr. ("Mr. Crispino") rolled over $325,308 from a traditional IRA with Fidelity

Investments to a new SIMPLE IRA with John Hancock Annuities ("JHA"). (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 38-1.) Plaintiffs dispute that this was a rollover, and instead claim that the transaction was a "transfer." (Pls.' Resp. to Def.'s SUMF ¶ 1, ECF No. 40-37.) Mr. Crispino asserts that it was his intention to open a traditional IRA with JHA (Pls.' Counterstatement of Facts ("CSF") ¶¶ 1–4, ECF No. 40-37; Crispino Decl. ¶¶ 14–15, ECF No. 40-1), and that it was JHA's error to classify the new annuity as a SIMPLE IRA (Pls.' CSF ¶ 3; Crispino Decl. ¶ 17). Defendant disputes that Mr. Crispino intended to open a traditional IRA when he opened the JHA account. (Def.'s Resp. to Pls.' CSF ¶¶ 1–4, ECF No 44-1.)[1]

In any event, Plaintiffs reported the $325,308 rollover as non-taxable on their 2009 income tax return. (Def.'s SUMF ¶ 2.) After looking into Plaintiffs' rollover further, the IRS determined that the rollover was taxable, and assessed $134,327 in additional income tax. (*Id.* ¶ 3.) The IRS collected the $134,327 and associated penalties and interest through two levies on Plaintiffs' assets: one on May 29, 2013 and one on June 3, 2013. (Esposito Decl. ¶ 11, ECF No. 38-9; 2009 IRS Plain-Language Tr. at 2, ECF No. 38-10.) On June 12, 2013, Defendant collected additional funds through another levy, which it applied to Plaintiffs' outstanding liability for other tax years. (Brady Decl. ¶ 12, ECF No. 44-2.)

Plaintiffs allege that Vincent Minelli, their tax agent, mailed an administrative claim for refund to the IRS on April 15, 2015. (Def.'s SUMF ¶ 7.) Mr. Minelli asserts that he mailed the administrative claim for refund using a postage label printed from a Stamps.com postage meter. (*Id.* ¶ 6.) He admits that he did not send the claim for refund to the IRS via certified mail or

---

[1] An individual contributes to a traditional IRA, while both an individual and an employer contribute to a SIMPLE IRA. (*See* Bardis Decl. Ex. L, ECF No. 40-18.) At the time of Mr. Crispino's alleged rollover, the Internal Revenue Code did not permit tax-free rollovers from a traditional IRA to a SIMPLE IRA. (*See* Def.'s Br. at 7, ECF No. 38-1 (citing 26 U.S.C. § 408(p)(1)(B) (effective October 3, 2008))).

registered mail. (*Id.*) During his deposition, Mr. Minelli testified that he normally uses the local United States Post Office to send documents. (*Id.* ¶ 7.) He also testified that that he could not remember any details about April 15, 2015, except that it was a "hectic" day. (Def.'s Resp. to Pls.' CSF ¶ 23; Minelli Dep. at 39–40, ECF No. 40-30.)

Mr. Minelli believes that he called the IRS to check in on the status of Plaintiffs' claim for refund around July or August of 2015 (Pls.' CSF ¶ 24; Minelli Dep. at 43–45, ECF No. 40-31), although he also admitted that his recollection could be faulty (Def.'s Resp. to Pls.' CSF ¶ 24; Minelli Dep. at 72, ECF No. 40-34). Regardless, at some point Mr. Minelli learned that the IRS did not receive the April 15, 2015 claim for refund and had no record of it. (Def.'s SUMF ¶ 8.) Plaintiffs dispute that the IRS did not receive the April 15, 2015 claim for refund and allege that they are entitled to a presumption that it was received. (Pls.' Resp. to Def.'s SUMF ¶¶ 7–9.) The parties agree that Mr. Minelli mailed a second copy of the claim for refund sometime around November 2015. (Def.'s SUMF ¶¶ 8–9.) The IRS received the second copy on November 2, 2015. (*Id.*) On December 31, 2015, the IRS mailed Mr. Minelli a letter denying Plaintiffs' claim for refund as untimely. (Claim for Refund Rejection Letter at 1, ECF No. 38-8.)

## II.   Procedural History

Plaintiffs filed the Complaint for Refund in this Court on December 28, 2017. (ECF No. 1.) Defendant answered the Complaint on February 27, 2018 (ECF No. 7), and discovery commenced. On January 8, 2021, Defendant moved for summary judgment. (ECF No 38.) On February 17, 2021, Plaintiffs filed their Opposition to Defendant's Motion for Summary Judgment and simultaneously moved for partial summary judgment. (ECF No. 40.) Defendant filed a Reply. (ECF No. 44.) With permission of the Court, Plaintiffs filed a Sur-Reply (ECF No.

49), and Defendant filed a Response to Plaintiffs' Sur-Reply (ECF No. 52). The Cross-Motions for Summary Judgment are currently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

At the summary judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248–49. Similarly, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**DISCUSSION**

**I.    Timeliness of Plaintiffs' Administrative Claim for Refund**

The threshold issue in this case is whether Plaintiffs timely filed their administrative

claim for refund with the IRS. If they did not, then this Court does not have jurisdiction to

consider their suit. *See Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 240 (1996) (citing

26 U.S.C. § 7422(a)); *see also Thorpe v. Dep't of the Treasury*, 2019 WL 1173024, at *2 (D.N.J.

Mar. 12, 2019) ("[T]imely filing of an administrative refund claim . . . is a prerequisite to a

federal court's assertion of subject matter jurisdiction."). An administrative claim for refund

must be filed with the IRS within two years of the payment of the tax. 26 U.S.C. § 6511(a).

Here, Plaintiffs' 2009 taxes were paid in full in June 2013, so their claim for a refund was

due by June 2015. (Def.'s SUMF ¶ 4; Esposito Decl. ¶ 10.) The parties do not dispute that the

IRS received Plaintiffs' claim for refund on November 2, 2015, after the June 2015 deadline.

(*See* Def.'s SUMF ¶¶ 8–9.) Defendant thus argues that Plaintiffs' claim for refund is untimely

and barred by § 7422(a). (Def.'s Br. at 4, ECF No. 38-1.) In response, Plaintiffs assert that their

claim for refund was timely because the first copy was *mailed* in April 2015, before the statutory

deadline. (Opp'n at 11, ECF No. 40-37.)

A.    *26 U.S.C. § 7502*

"A statutory filing requirement generally can be satisfied only by actual, physical

delivery to the Government. This has come to be known as the 'physical delivery rule.'" *Phila.*

*Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r of Internal Revenue*

*Serv.*, 523 F.3d 140, 147 (3d Cir. 2008) (citations omitted). However, the Internal Revenue Code

"relieves a taxpayer from the 'timely physical delivery' requirement where it postmarks the

5

document before the filing deadline but the Government receives the document after the

deadline." *Id.* at 148. The relevant subsection provides:

> If any return, claim, statement, or other document required to be filed, or any
> payment required to be made, within a prescribed period or on or before a
> prescribed date under authority of any provision of the internal revenue laws is,
> after such period or such date, delivered by United States mail to the agency,
> officer, or office with which such return, claim, statement, or other document is
> required to be filed, or to which such payment is required to be made, the date of
> the United States postmark stamped on the cover in which such return, claim,
> statement, or other document, or payment, is mailed shall be deemed to be the
> date of delivery or the date of payment, as the case may be.

26 U.S.C. § 7502(a)(1). In essence, this provision establishes a "timely mailed, timely filed" rule

for documents sent by U.S. mail, so long as (1) the document is timely postmarked and (2) "the

IRS actually receives the document at some later time." *Phila. Marine*, 523 F.3d at 148; *see also*

*Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 690 (2020)

(citing *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) ("If the document is never

delivered at all—say, because it gets lost in the mail—the exception by its terms does not

apply.")). By contrast, the statute provides that sending a document by *registered mail* "shall be

prima facie evidence that the return, claim, statement, or other document was delivered to the

agency, officer, or office to which addressed." 26 U.S.C. § 7502(c)(1)(A).

After § 7502 was enacted, a circuit split developed as to whether the statute provided the

*only* way to establish timely filing by timely mailing. Some circuits concluded that § 7502 was

exclusive. *See Miller*, 784 F.2d at 731; *Deutsch v. Comm'r of Internal Revenue*, 599 F.2d 44, 46

(2d Cir. 1979). Others, including the Third Circuit, concluded that § 7502 was not exclusive. *See*

*Phila. Marine*, 523 F.3d at 151; *Est. of Wood v. Comm'r of Internal Revenue*, 909 F.2d 1155,

1159 (8th Cir. 1990).[2] For circuits on this side of the split, a taxpayer is permitted to rely on extrinsic evidence, such as testimony that a document was mailed, to establish timely filing, even if the taxpayer does not meet the requirements of § 7502. *See Phila. Marine*, 523 F.3d at 147; *Est. of Wood*, 909 F.2d at 1161.

B.      *26 C.F.R. § 301.7502-1(e)(2)(i)*

In 2011, the Treasury Department promulgated a regulation to resolve the circuit split. The regulation clarified that, unless a taxpayer has "direct proof of actual delivery," the exclusive means of proving delivery to the IRS is "proof of proper use of registered or certified mail" or a private delivery service. 26 C.F.R. § 301.7502-1(e)(2)(i) (2011). The regulation reads:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated [private delivery service] as provided for by paragraph (e)(2)(ii) of this section, are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2)(i).

Here, the parties appear to agree that Plaintiffs do not meet the requirements of § 301.7502-1(e)(2)(i). (Def.'s SUMF ¶ 6; Pls.' Resp. to Def.'s SUMF ¶ 6.) The record does not include evidence that Plaintiffs' April 2015 claim for refund was actually delivered to the IRS, nor do Plaintiffs contend that they used registered or certified mail or a private delivery service. (*See* Def.'s SUMF ¶ 6.) Instead, Plaintiffs argue that their claim is timely under the common-law

---

[2] Until recently, the Ninth Circuit fell on the non-exclusive side of the circuit split. *See Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992). After the promulgation of Treasury Regulation § 301.7502-1(e)(2) in 2011, the Ninth Circuit revisited the issue and concluded that § 7502 was exclusive. *See Baldwin v. United States*, 921 F.3d 836, 841–42 (9th Cir. 2019).

mailbox rule. They also present several arguments challenging the validity of the § 301.7502-1(e)(2)(i).

### 1.      The Regulation Supplants the Mailbox Rule

Plaintiffs urge the Court to apply the common-law mailbox rule to their April 2015 claim for refund. (Opp'n at 12.) The common-law mailbox rule provides that if a document is properly mailed, a court will "presume the United States Postal Service delivered the document to the addressee in the usual time." *Phila. Marine*, 523 F.3d at 147.

The Court concludes that Plaintiffs may not rely on the mailbox rule after the adoption of § 301.7502-1(e)(2)(i) for several reasons. First, the history of the regulation indicates that its purpose was to clarify that § 7502 is exclusive. The regulation's history states that

> There is a conflict among the Circuits of the United States Courts of Appeals as to whether the provisions in section 7502 provide the exclusive means to establish prima facie evidence of delivery of a document to the IRS . . . . These proposed regulations . . . clarify that, other than direct proof of actual delivery, the exclusive means to establish prima facie evidence of delivery of Federal tax documents to the IRS . . . is to prove the use of registered or certified mail.

*See* Timely Mailing Treated as Timely Filing, 69 Fed. Reg. 56377-01 (Sept. 21, 2004).

Second, several federal courts have already concluded that § 301.7502-1(e)(2)(i) plainly supplants the mailbox rule. *See, e.g.*, *Anania v. McDonough*, 1 F.4th 1019, 1026 n.3 (Fed. Cir. 2021) (citing *Baldwin*, 921 F.3d at 841–42) ("In August 2011, the Treasury Department promulgated an amended version of . . . § 301.7502-1(e), which 'makes clear that, unless a taxpayer has direct proof that a document was actually delivered to the IRS, IRC § 7502 provides the exclusive means to prove delivery.'"); *Taha ex rel. His Deceased Brother v. United States*, 148 Fed. Cl. 37, 44 (Fed. Cl. 2020) ("Plaintiffs . . . urge the court to look to their testimonial evidence of mailing, . . . but the court is foreclosed from applying the common-law mailbox rule, considering the language of . . . § 301.7502-1(e)(2)."); *Baldwin*, 921 F.3d at 841–42 ("IRC §

7502 provides the exclusive means to prove delivery. In other words, recourse to the common-law mailbox rule is no longer available."). Other courts have not decided the issue outright but have indicated that it is unlikely that the mailbox rule survives § 301.7502-1(e)(2). *See, e.g.*, *Me. Med. Ctr. v. United States*, 675 F.3d 110, 118 (1st Cir. 2012) (stating that the "IRS has issued regulations interpreting § 7502 that would appear to foreclose the use of extrinsic evidence as a means of proving a timely postmark"); *Meinhold v. United States*, 2015 WL 6591462, at *4 (D. Colo. Oct. 30, 2015) (observing that "[i]n 2011 the Treasury Department promulgated regulations interpreting § 7502 that appear to foreclose the use of the mailbox rule as a means of proving timely delivery").

Third, the Third Circuit indicated, in an opinion issued prior to the adoption of § 301.7502-1(e)(2)(i), that the then-proposed regulation would "seemingly" supplant the mailbox rule for some future cases. *See Phila. Marine*, 523 F.3d at 152 n.14. In that case, the Third Circuit held that § 7502 did not displace the mailbox rule and concluded that a taxpayer could avail themselves of the rule under certain circumstances. *Id.* at 141, 152–53. However, the Third Circuit noted that

> [t]he Department of the Treasury has proposed a regulation that, if valid, would seemingly negate this holding for some future cases, providing that "[o]ther than direct proof of actual delivery, proof of proper use of registered or certified mail is the exclusive means to establish *prima facie* evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed," and that "[n]o other evidence of a postmark or of mailing will be *prima facie* evidence of delivery or raise a presumption that the document was delivered."

*Id.* at 152 n.14 (citing 69 Fed. Reg. 56377-01 (to be codified at 26 C.F.R. § 301.7502-1(e)(1)). The Third Circuit's dicta in *Philadelphia Marine* suggests that, after § 301.7502-1(e)(2)(i), § 7502 displaces the common-law mailbox rule.

9

Accordingly, in light of the plain language and regulatory purpose of § 301.7502-1(e)(2)(i), the weight of persuasive judicial precedents, and the Third Circuit's prior dicta on the issue, the Court concludes that Plaintiffs cannot avail themselves of the mailbox rule.

### 2.   The Regulation is Valid Under *Chevron*

Plaintiffs next turn to the validity of § 301.7502-1(e)(2)(i). Specifically, Plaintiffs argue that the regulation is invalid because it conflicts with the statutory intent of Congress. (Opp'n at 13–14.)

To determine whether an agency's promulgation of a regulation is valid, a court must perform the two-step analysis outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). At Step One, a court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* At this Step, a court may consider "the statutory text, as well as traditional tools of statutory construction, including canons of construction and the broader statutory context." *Sin Min Cen v. Att'y Gen.*, 825 F.3d 177, 186 (3d Cir. 2016) (internal quotation marks omitted). If, however, "the statute is silent or ambiguous with respect to the specific issue," then the court proceeds to Step Two, and asks "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. At Step Two, a court may consider "the plain language of the statute, its origin, and purpose." *Sin Min Cen*, 825 F.3d at 186.

At Step One, the Court finds the Third Circuit's opinion in *Philadelphia Marine* to be dispositive. In that case, the Third Circuit found that the text of § 7502 "d[id] not direct a result" as to whether the statute displaced the mailbox rule. *See Phila. Marine*, 523 F.3d at 150. The

*Philadelphia Marine* court looked beyond the text of the statute and considered principles of statutory interpretation, legislative history, statutory purpose, public policy concerns, and persuasive precedents to reach the conclusion that § 7502 did not foreclose a taxpayer's reliance on the mailbox rule. *Id*. at 149 fn.7. The Third Circuit recognized that other circuits interpreted the statute differently, and acknowledged that then-proposed § 301.7502-1(e)(2), if valid, "would seemingly negate [its] holding." *Id.* at 152 n.14. Accordingly, because the Third Circuit found that § 7502 did not express the unambiguous intent of Congress as to this precise issue, the Court's analysis proceeds to Step Two.

At Step Two, this Court concludes that § 301.7502-1(e)(2)(i) is based on a permissible construction of § 7502. At this Step, the Court "do[es] not ask whether it is the best possible interpretation of Congress' ambiguous language," but rather "extend[s] considerable deference to the agency and inquire[s] only whether it made a reasonable policy choice in reaching its interpretation." *Mejia-Castanon v. Att'y Gen. of the U.S.*, 931 F.3d 224, 235–36 (3d Cir. 2019) (internal quotation marks omitted). In this instance, "[a]s reflected by the circuit split that developed on this issue, . . . § 7502 could reasonably be construed in one of two ways: as intended merely to supplement the common-law mailbox rule, or to supplant it altogether." *Baldwin*, 921 F.3d at 843. Given that § 7502 itself is an exception to the physical delivery rule, "it is reasonable to conclude that 'Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'" *Id.* (quoting *Untied States v. Johnson*, 529 U.S. 53, 58 (2000)); *see also Hillman v. Maretta*, 569 U.S. 483, 496 (2013) ("[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent.").

11

It is true that the mailbox rule is grounded in the common law, and that "[i]t is a well-established principle of statutory construction that the common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose." *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983) (internal quotation marks omitted). However, as the Ninth Circuit explained in *Baldwin*, "the mere fact that dueling principles of statutory interpretation support opposing constructions of a statute does not prove, without more, that the agency's interpretation is unreasonable." 921 F.3d at 843. It is possible for an agency's construction to be reasonable "even if another, equally permissible construction of the statute could also be upheld." *Id.*

The Third Circuit's prior interpretation of § 7502 in *Philadelphia Marnie* does not alter the validity of § 301.7502-1(e)(2)(i). Plaintiffs argue that because the Third Circuit previously construed § 7502 in one way, a different interpretation conflicts with the statutory intent of Congress. (Opp'n at 13–15.) However, a "prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *see also id.* ("The better rule is to hold judicial interpretations contained in precedents to the same demanding *Chevron* step one standard that applies if the court is reviewing the agency's construction on a blank slate[.]")*.* As explained above, the *Philadelphia Marine* court did not hold that its interpretation of § 7502 followed from the unambiguous terms of the statute. *See id.* at 149–52. Therefore, under the Supreme Court's holding in *Brand X*, the Treasury Department was "free to fill th[e] gap by adopting its own reasonable interpretation of

12

the governing statute." *Baldwin*, 921 F.3d at 843 (applying *Brand X* and finding § 301.7502-1(e)(2) valid despite conflicting prior interpretation of § 7502).

Finally, the Court notes that several other courts have already found § 301.7502-1(e)(2)(i) to be valid under *Chevron*. *See, e.g.*, *Baldwin*, 921 F.3d at 844 ("Treasury Regulation § 301.7501-1(e)(2) is valid and applicable[.]"); *McBrady v. United States*, 167 F. Supp. 3d 1012, 1017 (D. Minn. 2016) ("The Court perceives no reason why it should not defer, . . . to [§ 301.7502-1(e)(2)] as reasonable interpretations of § 7502, especially because Congress expressly delegated to the Secretary of the Treasury the authority to regulate in this area."); *Jacob v. United States*, 2016 WL 6441280, at *2 (E.D. Mich. Nov. 1, 2016) ("Given that Congress had expressly delegated to the Secretary of the Treasury the authority to regulate in this area, . . . the court deems it appropriate to defer under *Chevron* . . . to the agency's reasonable interpretations of § 7502.").

> 3.   The Regulation is Not Preempted by Federal Rules of Evidence

Next, Plaintiffs contend that § 301.7502-1(e)(2)(i) is preempted by the Federal Rules of Evidence. Plaintiffs do not identify a Federal Rule of Evidence that codifies the mailbox rule or guarantees a party's ability to rely on it. (*See* Opp'n at 15–18.) Indeed, the mailbox rule does not apply in every filing context and can be overridden by rule or regulation. *See, e.g.*, *Akkaya v. Att'y Gen. of U.S.*, 285 F. App'x 952, 954 (3d Cir. 2008) (affirming dismissal of an appeal because the Board of Immigration Appeals does not follow a "mailbox rule" and under the applicable regulation "appeals must actually be received . . . within 30 days of the date on which an [Immigration Judge] mails a written order"); *Wisniewski v. Dir., Off. of Workers' Comp. Programs, U.S. Dept. of Lab.*, 929 F.2d 952, 956 (3d Cir. 1991) (stating that "[u]nder Rule 25 [of the Federal Rules of Civil Procedure], a document is timely filed if it is "received by the clerk

within the time fixed for filing"); *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 913–14 (3d Cir. 1991) (finding that timely mailing did not give rise to a rebuttable presumption of delivery when filing a proof of claim in a bankruptcy proceeding).

Instead, Plaintiffs cite several Federal Rules of Evidence that they allege conflict with § 301.7502-1(e)(2)(i). Plaintiffs rely on *Complaint of Nautilus Motor Tank Co., Ltd.*, 85 F.3d 105 (3d Cir. 1996), to support their argument. In that case, the Third Circuit declined to enforce a Coast Guard regulation that barred the admission of an accident report. *Id.* at 111–12. The Third Circuit found that the coast guard regulation conflicted with Rule 402 of the Federal Rules of Evidence because the accident report was "directly relevant to the issues before the district court." *Id.*

Plaintiffs argue that § 301.7502-1(e)(2)(i) conflicts with Rule 406 of the Federal Rules of Evidence. Rule 406 provides that

> [e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406.

The Court finds that § 301.7502-1(e)(2)(i) does not conflict with the introduction of habit or routine practice evidence. The regulation supplants the common-law presumption that proof of proper postage provides prima facie evidence of delivery. It does not bar Plaintiffs from introducing evidence that it was their habit to mail their tax documents in a certain way, or to prove that they acted in accordance with that habit when they mailed their claim for refund. Certainly, § 301.7502-1(e)(2)(i) may make any habit evidence less relevant if the habit does not comport with the regulation. But the regulation does not preclude the introduction of such evidence.

14

Plaintiffs' arguments regarding purported conflicts with Rules 301, 302, 201, and 405 of the Federal Rules of Evidence are also unavailing. Rule 301 provides that "[i]n a civil case, . . . the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption." Fed. R. Evid. 301. This Rule does not entitle a party to a specific presumption, such as the mailbox rule, but rather governs the burden of proof when a presumption applies. Thus, § 301.7502-1(e)(2)(i) presents no conflict with Rule 301.[3] Likewise, Rule 201, which provides for judicial notice of adjudicative facts, does not guarantee a party's right to the mailbox rule, even if prior courts have taken judicial notice of the mailbox rule when applicable. *See* Fed. R. Evid. 201. And Plaintiffs do not proffer any explanation as to how Rule 405, which applies to methods of proving character, conflicts with the regulation. *See* Fed. R. Evid. 405. Accordingly, § 301.7502-1(e)(2)(i) is not preempted by the Federal Rules of Evidence.

4.     The Regulation Applies Retroactively to Certain Documents

Finally, Plaintiffs argue that even if § 301.7502-1(e)(2)(i) is valid, it should not apply to tax return years prior to its adoption in 2011. This argument also fails.

Section § 301.7502-1(g)(4) expressly provides that the regulation applies to all documents mailed after September 21, 2004, which was the date the regulation was proposed. 26 C.F.R. § 301.7502-1(g)(4). That provision "complies with . . . § 7805(b), which authorizes the Treasury Secretary to make regulations retroactively applicable as far back as the date of their proposal." *Baldwin*, 921 F.3d at 844 (citing 26 U.S.C. § 7805(b)(1)(B)). Here, Plaintiffs allege that they mailed their claim on April 15, 2015, well after September 21, 2004. Thus, the regulation applies to Plaintiffs' claim.

---

[3] There is also no conflict with Rule 302 of the Federal Rules of Evidence, which applies to presumptions when a state law supplies the rule of decision, for the same reason. *See* Fed. R. Evid. 302.

C.      *Statute of Limitations*

Plaintiffs also challenge Defendant's calculation of the two-year statute of limitations period. Plaintiffs assert that Defendant's "misapplication of funds levied in June 2013 to the 2009 tax year" created a "premature" statute of limitations. (Opp'n at 19.) At the time of the June 3, 2013 levy, Plaintiffs had outstanding tax balances for tax years 2004, 2005, 2006, 2008, and 2009. (Pls.' CSF ¶ 13.) Plaintiffs argue that they should have been given the opportunity to direct the proceeds of the June 3, 2013 levy to the oldest tax years first. (Opp'n at 19.) According to Plaintiffs, if the older tax years were paid first, then their 2009 balance would not have been paid in full on June 3, 2013, and the two-year statute of limitations would not have started to run until a later date. (*Id.*) And if the two-year period began on a later date, then their November 2015 claim for refund would have been timely. (*Id.*)[4]

Plaintiffs cite *Freck v. Internal Revenue Service*, 37 F.3d 986 (3d Cir. 1994) in support of their statute of limitations argument. In that case, the Third Circuit held that a taxpayer who made a voluntary payment to the IRS should have been given some opportunity to allocate it as she wished. *Freck*, 37 F.3d at 994–95. However, a taxpayer may not designate the application of involuntary payments, which include payments received as a result of a levy. *See In re Kaplan*, 104 F.3d 589, 596 n.16 (3d Cir. 1997); *United States v. Pepperman*, 976 F.2d 123, 127 (3d Cir. 1992). At one point during their discussion of the June 3, 2013 levy, Plaintiffs reference a

---

[4] In their brief, Plaintiffs state that "application of the levy to the oldest tax years would not have resulted in payment of the alleged 2009 tax assessment until December of 2013." (Opp'n at 19; *see also* Bardis Decl. ¶¶ 12, 15, ECF No. 40-5 (calculating a December 2, 2015 deadline to file a claim for refund).) In Mr. Minelli's declaration, he states that if the IRS had applied payments to the oldest tax years first, "the two[-]year statute of limitations . . . would not have commenced until November 15, 2013." (Minelli Decl. ¶ 25, ECF No. 40-2.) Plaintiffs and Mr. Minelli do not explain exactly how they arrived at these dates.

"voluntary payment" made to the IRS. (*See* Opp'n at 19.) However, it is unclear what this statement refers to because the June 3, 2013 levy was an involuntary payment, and Plaintiffs have not contested this fact. (*See* Def.'s SUMF ¶ 4, ECF No. 38-1; Pls.' Resp. to Def.'s SUMF ¶ 4.) Accordingly, because the June 3, 2013 payment was an involuntary levy, *Freck* is of no assistance to Plaintiffs here.

Plaintiffs also argue that the IRS did not follow typical protocol in the Internal Revenue Manual ("IRM") when it applied the levy proceeds to the 2009 tax year instead of older tax years. (Opp'n at 9–10.) Plaintiffs proffer the declarations of John Newman and Sal Minelli in support of this position. (*See* ECF Nos. 40-3, 40-2.) Defendant objects on the basis that Mr. Newman and Mr. Minelli's declarations are expert opinions that were not properly disclosed pursuant to Rule 702 of the Federal Rules of Evidence. (*See* Def.'s Resp. to Pls.' CSF ¶ 15.)

"The procedures set forth in the IRM do not have the effect of a rule of law and, therefore, are not binding upon the IRS." *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Goldman*, 644 F. Supp. 101, 103 (W.D. Pa. 1986); *see also Lojeski v. Boandl*, 788 F.2d 196, 198 (3d Cir. 1986) ("[The IRM] establishes only an internal operating procedure, not a constitutional due process standard."). Because the IRS is not bound by the IRM, the Court need not consider Mr. Newman and Mr. Minelli's opinions as to whether the IRS followed internal procedures. Thus, the Court finds it unnecessary to decide whether Mr. Newman and Mr. Minelli's opinions were properly disclosed.

In the final analysis, the Court concludes that § 7502, as interpreted by § 301.7502-1(e)(2)(i), controls the timeliness of Plaintiffs' claim for refund. Because Plaintiffs' claim for

refund was not timely under applicable law, the Court does not have jurisdiction to consider their suit. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 38) is granted.[5]

## II.    Plaintiffs' Cross-Motion for Summary Judgment

In addition to opposing Defendant's Motion for Summary Judgment, Plaintiffs also cross-move for summary judgment on their claim brought pursuant to 26 U.S.C. § 7433(a). Section 7433 allows a taxpayer to recover damages if any IRS employee "recklessly or intentionally, or by reason of negligence, disregards any provision" of the Internal Revenue Code. 26 U.S.C. § 7433(a). Defendant argues that the Court should not consider Plaintiffs' § 7433 claim because it was not pled in the Complaint and not explored in discovery. (Reply at 11–13, ECF No. 44.)

"District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour." *Carr v. Gillis Associated Indus., Inc.*, 227 F. App'x 172, 176 (3d Cir. 2007); *see, e.g.*, *Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387, 393 (3d Cir. 2004), (finding that, "[b]ecause of undue delay and prejudice," the district court did not abuse its discretion by refusing to allow plaintiffs to assert a new claim at the summary judgment stage); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2002) (explaining that "[p]laintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers" to a motion for summary judgment); *Tirone v. Trella*, 2007 WL 3170098, at *6 (D.N.J. Oct. 29, 2007) (rejecting additional claims because "[a]dding claims to a pleading is properly done by amending the complaint; it is too late to introduce an additional claim at the summary judgment stage").

---

[5] Because Plaintiffs' claim for refund was untimely and summary judgment is warranted on this issue, the Court need not decide whether Plaintiffs' transfer of retirement funds was correctly treated as a taxable distribution. (*See* Def.'s Br. at 7, ECF No. 38-1; Opp'n at 20–21.)

Here, Plaintiffs did not assert a § 7433 claim in their prior pleadings or submissions to the Court. The Complaint includes no citation to § 7433, nor does it allege any negligent, reckless, or intentional disregard of a statute or regulation. (*See generally* Compl. ¶¶ 1–18.)[6] Additionally, Plaintiffs did not add a § 7433 claim throughout discovery. Plaintiffs provide a June 2020 letter as evidence that Defendant was on notice of their § 7433 claim. (ECF No. 49-5.) The letter, however, was sent during settlement negotiations several months after the close of discovery, and clearly states that "the contents herein may not be deemed as an admission or admitted into evidence." (Settlement Letter at 1, ECF No. 49-5.)[7] Moreover, the letter does not cite § 7433 or allege that Defendant violated any specific statute or regulation. (*See id.* at 2–3.) And although it does allege violations of the Internal Revenue Manual ("IRM"), such violations cannot provide the basis for an unlawful collection claim. *See Shwarz v. United States*, 234 F.3d 428, 433–34 (9th Cir. 2000) (finding that a violation of the IRM "cannot support a claim under § 7433"); *see also Goldman*, 644 F. Supp. at 103.

Plaintiffs contend that their reference to 26 U.S.C. § 7426 in the Complaint properly raises a § 7433 claim. (*See* Bardis Cert. ¶ 4, ECF No. 49-1.) However, § 7426 and § 7433 are distinct causes of action, and § 7426 is, on its face, inapplicable to Plaintiffs' case. *See* 26 U.S.C. § 7426(a).[8] The Court does not expect Defendant to "read causes of action into a complaint where they are not present." *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n.1 (3d Cir. 1997).

---

[6] Plaintiffs have not attempted to amend the Complaint, and do not request leave to do so here.
[7] The page numbers to which the Court refers are the CM/ECF page numbers.
[8] Section 7426 applies to persons "other than taxpayers." 26 U.S.C. § 7426. It allows any person, "*other than the person against whom is assessed the tax out of which such levy arose*," to assert a cause of action on property in which the party claims an interest. § 7426(a)(1) (emphasis added). Here, the tax in question is assessed against Plaintiffs, so they cannot bring a claim for wrongful levy pursuant to § 7426. *See Komlo v. United States*, 657 F. App'x 85, 88 (3d Cir. 2016).

19

Additionally, the Court emphasizes that Plaintiffs expressly told Defendant that they were not planning to pursue their "improper levy" claim. Specifically, Defendant asked Plaintiffs in interrogatories to clarify if they intended to raise a claim for wrongful levy under § 7426, or to "indicate the basis, *including citations to specific statutes*, that would permit the recovery of the improper levy." (Def.'s Req. for Clarification, ECF No. 44-13 (emphasis added).) Plaintiffs replied that

> [o]ur position that the government had used an "improper levy upon the sum of $250,942.90 IRA roll over" was an alternate position. This position was provided for discussion in the overall settlement resolution of the case. The taxpayer at this time does not want to argue this issue before the Court.

(Pls.' Resp. to Def.'s Req. for Clarification at 1, ECF No. 38-5.) Defendant was entitled to rely on this response, which waives an "improper levy" claim. And Plaintiffs have not supplemented or corrected their discovery responses thereafter, which they are required to do under Rule 26 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26 ("A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure is incomplete or incorrect[.]").

In short, Plaintiffs did not plead a § 7433 claim and later told Defendant that they "d[id] not want to argue this issue before the Court." (Pls.' Resp. to Def.'s Req. for Clarification at 1.) Allowing Plaintiffs to raise a § 7433 claim at this stage "would result in additional discovery, cost, and preparation to defend against the new [claim]." *See Laurie*, 105 F. App'x at 393. Accordingly, Plaintiffs' Motion for Summary Judgment as to their § 7433 claim is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 38) is granted, and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 40) is denied. An

appropriate Order will follow.


Date: <u>July 26, 2021</u>                                    <u>/s/ Anne E. Thompson</u>
                                                                    ANNE E. THOMPSON, U.S.D.J.